IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KATHERINE M. FORSBERG, | ) | |
| | ) | No. 33742-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WESTON T. GRIEPP, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Katherine Forsberg appeals the summary judgment dismissal of her personal injury action against Weston T. Griepp. The trial court determined as a matter of law that the action became time barred without process having been effectively served on Mr. Griepp. Ms. Forsberg argues that her timely attempts at substitute service and service by mail, or one of them, was effective. We disagree and affirm.

FACTS AND PROCEDURAL BACKGROUND

Katherine Forsberg and Weston T. Griepp, who goes by "Taylor,"[1] were in an

_____

[1] We refer to the defendant as Taylor to avoid confusing references to him and to his father. Our shorthand reference to his father, Weston P. Griepp, will be as Mr. Griepp Sr.

automobile accident on February 22, 2012. On February 10, 2015, Ms. Forsberg filed a negligence action against Taylor in Stevens County. Approximately one week later, a lawyer filed a notice of appearance on Taylor's behalf. A little over a month after that, the lawyer filed Taylor's answer and affirmative defenses. Included was the defense of inadequate service of process.

Stevens County Sheriff's Deputy Henry Stroisch had left written discovery with Taylor's father, Weston P. Griepp, on February 11, 2015, at the same time he delivered Ms. Forsberg's summons and complaint to Mr. Griepp Sr., who lives on Stevens Street in Chewelah. When responses to the discovery were not forthcoming, Ms. Forsberg's lawyer tried without success to contact Taylor's lawyer, to see when responses would be provided. He eventually arranged a discovery conference for April 24. It was during the discovery conference that Ms. Forsberg's lawyer learned that the discovery had not been answered because Taylor no longer lived at the Chewelah address and did not intend to respond unless he was properly served. Ms. Forsberg had relied for service on the address listed in the accident report, but the accident occurred when Taylor was 19 years old and living at his father's home.

Less than one month remained for Ms. Forsberg to effect service under RCW 4.16.170, which tolls the statute of limitations for 90 days from the filing of a complaint subject to service being effected during that time frame.

2

On April 30, Ms. Forsberg filed a motion requesting permission to serve Taylor by mail. She argued that the evidence she offered demonstrated that she had "exhausted all reasonable measures" to locate Taylor and that it was "apparent that [he] has either left the State of Washington with intent to avoid service of process of the summons and complaint in this action or is concealing himself within the State to avoid service." Clerk's Papers (CP) at 19. The following week, the trial court entered an ex parte order allowing Ms. Forsberg to serve Taylor by mail at his father's Chewelah address. Ms. Forsberg's attorney mailed the summons and complaint to the Chewelah address the same day.

On May 14, 2015, Taylor filed a timely motion for reconsideration of the order authorizing service by mail, together with a motion for summary judgment that the attempt to serve Taylor at his father's home was ineffective. He argued that because "the statute of limitations has now expired . . . [and] plaintiffs cannot now attempt to remedy their failure to serve," the action should be dismissed. CP at 60. He supported his motions with declarations from himself and his father.

Taylor stated in his declaration that four months after his accident with Ms. Forsberg he had moved to 3311 North Lacey Street in Spokane and that he had not lived with his parents thereafter. He stated he had not yet been personally served with the summons and complaint, had not received a copy from his father, and had never

3

attempted to avoid service. He provided a copy of his driver's license, issued on November 20, 2013, which reflected the address on Lacey Street in Spokane.

Mr. Griepp Sr.'s declaration similarly stated that his son had moved to Spokane in June 2012 and had not lived at the Chewelah home since. He also stated that when Deputy Stroisch attempted to serve the legal papers at the Chewelah home,

> I told the officer that I was not Weston T. Griepp and that he no longer lived here, but the officer did not take the papers back, nor did he ask where my son currently lived. I have not given those papers to my son.

CP at 61-62. Deputy Stroisch would later dispute this account in a supplemental declaration.

Ms. Forsberg responded and opposed Taylor's motion, attaching supplemental evidence that she argued supported her efforts to serve Taylor, including evidence of Internet and social media searches, correspondence with Taylor's former employer, and the declaration of a second process server, Troy Daniels.

Taylor moved to strike Ms. Forsberg's supplemental evidence as hearsay and as not having been before the judge when he entered the order allowing service by mail.

Without ruling on the motion to strike, the court reconsidered the order to serve by mail, found that it had been entered in error, and granted summary judgment, dismissing Ms. Forsberg's claims with prejudice.

Ms. Forsberg then filed successive motions, first for reconsideration, and later, to vacate the order granting summary judgment. She filed additional supplemental evidence

4

in support of her motions. Taylor again moved to strike some of the evidence. The trial

court granted Taylor's motion to strike and denied Ms. Forsberg's motion to vacate.

Ms. Forsberg has appealed the order granting summary judgment and the order

denying her motion for reconsideration.[2]

ANALYSIS

Ms. Forsberg challenges the dismissal of her complaint, arguing that Deputy

Stroisch's delivery of the summons and complaint was effective substitute service and,

alternatively, that the trial court erred when it reconsidered its order authorizing service

by mail.

An order granting summary judgment is reviewed de novo, "considering the

evidence and all reasonable inferences from the evidence in the light most favorable to

the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

Summary judgment is appropriate where there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. CR 56(c).

---

[2] Ms. Forsberg also argues in her opening brief that the trial court erred when it denied her motion to vacate its order granting summary judgment.

This court accepted review of the order granting summary judgment on September 10, 2015, and accepted review of the order denying reconsideration on September 18. The trial court denied Ms. Forsberg's motion to vacate nearly a month later, on October 13, 2015. Ms. Forsberg never amended her notice of appeal to include the order on her motion to vacate, nor did she file a new appeal. Because the decision on the motion to vacate did not affect earlier-appealed orders and was not entered before we accepted review, an appeal of that decision is not before us. *See* RAP 7.2(e); 2.4(b).

## *I. The attempted service at Mr. Griepp's Chewelah home was not effective substitute service*

"Substitute service of process is effective when (1) a copy of the summons is left at defendant's house of usual abode, (2) with some person of suitable age and discretion, (3) then resident therein." *Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996) (citing former RCW 4.28.080(15) (1991)). Taylor does not dispute that Deputy Stroisch left a copy of the summons with his father, a person of suitable age and discretion, at the home at which his father then resided. At issue is whether Mr. Griepp Sr.'s Chewelah home was Taylor's house of usual abode. Ms. Forsberg contends that if "usual abode" is liberally construed to effectuate service and uphold jurisdiction as required by *Sheldon*, then service on Mr. Griepp Sr. was sufficient.

In *Sheldon*, the Washington Supreme Court held that the statutory provisions permitting substitute service must "be liberally construed to effectuate service and uphold jurisdiction of the court." *Id.* at 609. Applying a liberal construction, the court noted that though "there is no hard and fast definition of the term 'house of usual abode,'" the term "'must be taken to mean such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for defendant to appear.'" *Id.* at 610 (quoting *Sheldon v. Fettig*, 77 Wn. App. 775, 781, 893 P.2d 1136 (1995), *aff'd*, 129 Wn.2d 601 (1996)). Notwithstanding Taylor's and his father's affidavits that Taylor moved to Spokane in June 2012, Ms. Forsberg argues

6

that the Chewelah home could be a house of usual abode for Taylor under this liberal standard.

The defendant in *Sheldon* had moved from her parents' Seattle home to Chicago for a flight attendant training program eight months before the plaintiff attempted to serve her by leaving a summons and complaint with her parents. But she had continued to use her parents' address as her residence for purposes of voter registration, car registration, title to her car, car insurance, and had provided it as her address when cited for speeding. *Id.* at 610. She also returned to her parents' home frequently when not on flight assignments, and was even there once when the plaintiff's attorney called. Our Supreme Court held that while "most people generally maintain only one house of usual abode," the defendant in *Sheldon* could fairly be said to maintain two centers of domestic activity, and therefore, two usual abodes for the purposes of service. *Id.* at 610-12.

In this court's post-*Sheldon* decision in *Farmer v. Davis*, 161 Wn. App. 420, 250 P.3d 138 (2011), the defendant—like Ms. Forsberg—wanted us to extend the result in *Sheldon* to any case in which a teenage or adult child lived with a parent at the time of an automobile accident and a plaintiff later relies on the accident report and delivers process to a parent at the parental address. But as we held in *Farmer*, those facts, standing alone, do not fall within *Sheldon*'s concept of a second abode for process purposes. This case is like *Farmer*, in that Ms. Forsberg offered no evidence that Taylor made continued use of his father's address as his residence address, or that he had ever returned to live or stay

7

for any extended period at his father's home.[3] Viewing the evidence in the light most favorable to Ms. Forsberg and liberally construing RCW 4.28.080(15), she did not demonstrate any genuine issue that the Chewelah home was a second house of usual abode for Taylor at the time of the attempted service.

### II. The trial court did not abuse its discretion in reconsidering its authorization of service by mail

CR 59(a) lists the bases on which a party may move for reconsideration. In asking the trial court to reconsider its order authorizing service by mail, Taylor relied on two: "That there is no evidence or reasonable inference from the evidence to justify . . . the decision, or that it is contrary to law," CR 59(a)(7); and, an "[e]rror in law occurring at the trial and objected to at the time by the party making the application." CR 59(a)(8).

A trial court is not required to reconsider its decisions and we review its decision whether to reconsider for abuse of discretion. CR 59(a) ("[M]otions *may* be granted for any one of the following causes . . .") (emphasis added); *Go2Net, Inc. v. C I Host, Inc.*,

---

[3] After summary judgment was granted and the case was dismissed, and after Ms. Forsberg's motion for reconsideration was fully briefed, she submitted a further supplemental declaration from a paralegal attaching evidence that (1) Taylor had provided the Department of Licensing (DOL) with a "mailing address" that was a post office box in Chewelah, and (2) the Chewelah postmaster reported that the "physical address" associated with the Chewelah post office box was Mr. Griepp Sr.'s Stevens Street address. CP at 152-57. More importantly, the DOL had confirmed to the paralegal that Taylor's *residence* address was a Spokane address. In *Sheldon*, it was the defendant's repeated use of her parents' address as her *residence* address and the fact that she periodically lived in their home that supported a finding that it was a second usual house of abode.

115 Wn. App. 73, 88, 60 P.3d 1245 (2003). Where, as here, reconsideration is sought on the basis that the original decision was legally erroneous, we review the legal issues de novo.

"Statutes authorizing service by means other than personal service, *i.e.*, constructive and substituted service, require strict compliance." *Painter v. Olney*, 37 Wn. App. 424, 427, 680 P.2d 1066 (1984). RCW 4.28.100(2) sets out the conditions required before service by mail may be authorized. They were summarized by *Pascua v. Heil*, 126 Wn. App. 520, 526, 108 P.3d 1253 (2005):

> Substitute service by mail . . . is permissible when the plaintiff sets forth the following facts: (1) that the defendant could not be found in Washington after a diligent search; (2) that the defendant was a resident of Washington; and (3) that the defendant had either left the state or concealed himself within it, with intent to defraud creditors or avoid service of process.

A party that seeks authorization to serve process by mail must clearly show all of the conditions required. *Jones v. Stebbins*, 122 Wn.2d 471, 482, 860 P.2d 1009 (1993).

In the interest of simplicity, we focus on Mr. Forsberg's burden to demonstrate that Taylor had left the state or concealed himself within it, with intent to defraud creditors or avoid service of process. Her evidence of that condition is most clearly lacking. By focusing on this essential condition, we also avoid the need to address most of the parties' disputes over whether the court should have considered supplemental or otherwise objected-to evidence.

Affidavits offered in support of a motion to serve process by mail need not clearly prove a defendant's intent to avoid service but they must clearly articulate facts that raise an inference of intent to avoid service. *Boes v. Bisiar*, 122 Wn. App. 569, 577, 94 P.3d 975 (2004). A plaintiff "must produce the specific facts which support the conclusions required by the statute." *Pascua*, 126 Wn. App. at 527.

Ms. Forsberg relies upon evidence that her second process server, Mr. Daniels, was told that the Griepp family was in California. More specifically, in late April 2015, after the problem with Deputy Stroisch's service came to Ms. Forsberg's lawyer's attention, Mr. Daniels was hired to serve Taylor at a second Chewelah address that had been discovered. But Mr. Daniels was familiar with the Griepp family, mistakenly assumed that "Weston T. Griepp" was Mr. Griepp Sr., and went to where he knew Mr. Griepp Sr. lived: Stevens Street; the same address where Deputy Stroisch had attempted service. It was after no one responded on his third attempt at service that, according to Mr. Daniels's affidavit, "a neighbor came out of the house and told me that the family was in California." CP at 103.

Mr. Daniels's report of the neighbors' statement is hearsay; it does not support the conclusion that the neighbor's reference to "the family" included Taylor; and even if Taylor had been in California on April 29, that fact would be insufficient without more, to raise an inference that he was trying to avoid service.

10

Ms. Forsberg also relies on evidence that 12 days before the statute of limitations ran, Taylor changed his address with the DOL from one address in Spokane (on Lacey Street) to a more current address in Spokane (on 7th Avenue). Conceivably, it was while cooperating with his lawyer's preparation of a motion challenging the sufficiency of service that Taylor realized he should update his address with the DOL. Or perhaps Taylor had only recently moved to the 7th Avenue address. Whatever the explanation, by updating his address Taylor increased, not decreased, the prospect that he would be served. Ms. Forsberg offers no evidence or argument explaining how Taylor's action can be reasonably construed as evidence of intent to evade service.

The fact that Taylor did not authorize his lawyer to accept service or disclose his address does not raise an inference of intent to avoid service. "Far from an obligation to assist service of process, this court has held that a defendant's only duty is to accept service when validly tendered and not to evade service." *Pascua*, 126 Wn. App. at 532. Similarly, Taylor's lack of personal information online is insufficient, because a "lack of a 'public recorded persona,' without more," does not create an inference of intent to avoid service. *Bruff v. Main*, 87 Wn. App. 609, 613, 943 P.2d 295 (1997).

Because Ms. Forsberg did not present specific facts supporting Taylor's intent to avoid service—an essential condition to service by mail—the trial court's original order authorizing such service was not supported by the record. The court did not abuse its discretion in deciding to entertain the motion for reconsideration in order to correct the

11

No. 33742-1-III
*Forsberg v. Griepp*

error. Given insufficient service prior to the running of the limitations period, summary judgment was appropriate.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Fearing, C.J.

Lawrence-Berrey, J.

12